20-1674 from the Northern District of Iowa, Levi Wilson et al versus Scott Lamp et al. Mr. Jacobsma. Jacobsma, your honor. Thank you. You may proceed. Thank you. May it please the court and counsel for the defense. This appeal before you today is about the district court's denial of the plaintiff's right to have several of their claims resolved by a jury. This happened in several ways which I pointed out and discussed in my brief. Where I believe the district court erred the most was disallowing the plaintiffs the right to submit their state tort claim of intrusion of seclusion to the jury. Now, and I think that the reason why the district court did this had to do with a flawed rationale on the part of the district court that believes, I think, that the fourth amendment is somehow the ceiling of protection to be given to individuals rather than merely a floor. Because what the district court found when it granted the defendants rule 50A motion was that because the conduct of the law enforcement officers here to a great extent complied with the fourth amendment as found by this court in, I'll call it Wilson 1, that therefore there could be no submission of this tort claim of intrusion of seclusion. And I think as the case law suggests the U.S. Supreme Court cases that I cite in my brief I think acknowledge that the fourth amendment or the federal constitution is simply just the floor of protection. Counsel, let me interrupt you. The Iowa official word is admirable floor, you may know. They put admirable fourth floor. But that's, did you understand my words? I was trying to be clever. But my point is, that was the clever part, thank you. But here's the point. Many state supreme courts say this kind of thing. And then typically if you look at their analysis they revert to the same analysis, the same words, the same cases, as the U.S. Supreme Court and as the federal law. So what you need to do here is show us a Iowa state supreme court case, you might get five or quarter bills, but you really need an Iowa state supreme court case that tells us that it's different than the fourth amendment in Iowa. Well, on the tort claim specifically of seclusion, I think the Iowa case law does suggest that. Which case? Tell me the case. Well, it's an Iowa court of appeals case of Davenport v. City of Corning, where the Iowa court of appeals specifically said that the trial court in that case committed error by employing a finding that simply because the fourth amendment was complied with here, that did not preclude an intrusion of seclusion claim, and they remanded the case. I've got to ask you, I know this is painful, but you're an Iowa lawyer and I'm not, it's a table case where they didn't even publish the opinion anywhere. Do you know what authority under Iowa law that case has? It has persuasive authority, so it's not binding. Proceed with your argument. Yeah, go ahead. So I agree that there hasn't been an Iowa supreme court case directly on point addressing whether or not a intrusion of seclusion claim can be submitted if compliance with the fourth amendment has taken place. But I would suggest to the court that the other case law in Iowa does suggest that that very kind of the case of Veatch v. City of Waverly. I mean, if the same reasoning applied that the district court applied in this case, that is, if the fourth amendment is complied with, then therefore that precludes any kind of tort claim based on the same conduct, then the Iowa supreme court in Veatch v. City of Waverly would have said, look, the 8th circuit, this court, already found previously that the fourth amendment was complied with here, therefore there's nothing more for us to decide. But that's not what they did. In fact, they made a point of saying that simply because you comply with the fourth amendment doesn't mean you're complying, a law enforcement officer is complying with state law. And so therefore they went through an analysis of whether or not the statutory grounds of search and seizure were still complied with and whether or not the plaintiff could maintain their false arrest cause of action. And they ultimately found that the statutory grounds were complied with, but the point is that they, I think, I believe, were stating and very clearly stating that you can still, that state law does, standards aren't necessarily the same as the fourth amendment. And you have to look at what the state grounds are. Counsel, this is Judge Rose. Let me take this just a little bit different direction. I mean, this court has stated many, many times that just because something doesn't constitute a constitutional violation for purposes of section 1983, that doesn't mean that it couldn't constitute a tort claim under state law. And I think that's what you're arguing, but don't you still have a problem showing that you presented sufficient evidence to satisfy the elements of a privacy claim? And if so, is that something that we can address as an appellate court? Well, you mean as far as whether a privacy interest was invaded, or do you mean just all the elements of an intrusion and seclusion claim? Well, the court ruled as a matter of law that you couldn't state this claim, but did you even present enough evidence from which a reasonable and is that something that we could reach? Oh, I believe so, your honor. And that's because, first of all, I mean, Mr. Wilson and his son were detained from their moving vehicle. I think that's very clear that that's a privacy interest, but more so than that, I mean, he, his person was searched and without his consent, his vehicle was searched without his consent. Those are all I think privacy interests. The other part of the intrusion of seclusion claim has to do more with the how, as opposed to the what. That is, it has to be done in a way or in a manner that's highly offensive to a reasonable person. And I think that what the jury would have been able to find here, and I think this is supported by this court's opinion of Hill versus McKinley, is that simply because it was permissible constitutionally to act this way on the part of the law enforcement officers, that doesn't mean it was necessary that they did this. So in other words, for example, the jury, I think could have found that it was highly offensive to a reasonable person to keep pointing this gun at Mr. Wilson, even though he complied with the request of the law enforcement officer to put his hands out the window. And that was after he was discovered to not even be the person they were searching for. So I think a jury could resolve that in his favor. Is that the fact most favorable to the jury here, believing the one officer who when I recognized him, I put down my gun? One of the officers stated that. And the jury could believe that, so we take that as a fact. Okay, go ahead for your argument. Yes, the jury could believe that, but the jury could also believe, and I would assume should also believe, that same officer testified that she identified him as the person who was not the individual they were searching for. But Agent Lamp continued to keep his weapon pointed at Mr. Wilson. Now, if it pleases the court, I would also, so I think, your honor, that the case law suggests that, as I stated, and as I think this court has held, like I said, based upon Hill versus McKinley, that in this case, intrusion of seclusion claim could be submitted to the jury and should have been resolved by them. Now, to please the court, I would like to also move to my argument that the jury on the excessive force claim was not properly instructed, that the court required essentially too much of the plaintiff to prove in order to prove that claim. That instruction as to excessive force was taken from the language of this court's prior opinion in Wilson 1, and I think that the court didn't give it a fair reading because I think what, and obviously this court will be able to tell us what they intended with that language, but what the district court believed was that the language that this court used in Wilson 1 was basically setting forth these are all of the facts that have to be proven in order to qualify as excessive force. And I don't think that's the fairest reading of this case. I think what the court said in Wilson 1 was simply that the pointing of the weapons as they approached the vehicle, that is the defendants, was not excessive force. But this court didn't make a finding that, well, keeping the weapon pointed at the plaintiff, even though after he complied with the request to put his hands out the window, they didn't, the court didn't say that was not excessive or that after it was, he was identified to be Levi Wilson as opposed to David Wilson, the court didn't say that's not excessive to keep the gun pointed at him at that point. But instead, what the district court latched onto was the allegations that the plaintiff was making occurred. And I think the jury would have been able to find still occurred, even though they didn't find that each and every allegation of fact took place that the plaintiffs were claiming. Because something short of having the weapons pointed at Mr. Wilson throughout the entire duration of the incident doesn't mean it couldn't be excessive force in that case. And in fact, I think actually the court's holding in Wilson 1 supports that as well, because when the court denied the defendant's request for qualified immunity on the part of the excessive force claim, I mean, one of the cases that the court cited to deny that in Wilson 1 was the case of Feimster versus Denture, which the court quoted that an officer's use of any force is unreasonable when the individual quietly submits. And there was no evidence of any resistance in this case. I mean, the evidence was clearly that Mr. Wilson complied with all the requests made. So I do believe that the court was mistaken when it took the language exactly as stated in the opinion and used it as the instruction for the jury. I think what should have been done by the court is to tailor the language more to the model instruction, where the jury simply needed to find that was the force used more than necessary to ensure officer safety. Mr. Jacobson, I see you're well into your rebuttal time. Would you like to reserve some? Yes, I would. Thank you, Your Honor. Very well. Court will hear from Mr. Langholz. May I please the court? Good morning. My name is Sam Langholz. I represent the state of Iowa and Agent Lamp in this case. Before jumping into the discussion that you were engaged in with Mr. Jacobson, it's important to step back and remember that this court's already decided four central questions when this case was before it several years ago. The stop of Mr. Wilson's truck did not violate the U.S. Constitution. The pat down of Mr. Wilson did not violate the U.S. Constitution. And the approach of Agent Lamp and Officer Dorhout Van Ingen with firearms pointed did not violate the U.S. Constitution, unless it was found that they were continuously pointed, even after it was identified that Levi rather than David was the driver, that the passenger was a child, and that Levi had been patted down and did not have a gun. All of this... Counselor, are you arguing that any time something doesn't constitute a violation of the Constitution, it cannot give rise to a tort claim under state law? No. No, we are not, Judge Grouse. Turning to that tort claim, to the seclusion, the intrusion on seclusion claim, the state recognizes and the district court did not conflate the constitutional threshold with the tort threshold. They are two different standards. The tort requires an intrusion on seclusion thrown about that was thrown upon their personal affairs and that was highly offensive to a reasonable person. There's two reasons why when there's a holding of no federal constitutional violation here, or rather, in fact, that there was a constitutional seizure that occurred here, that that tort was appropriately dismissed as a matter of law. The first is the one that the court focused on, that because there was a constitutional seizure, and it's not that the court was using a Fourth Amendment analysis and deciding there was no intrusion based on the Fourth Amendment, which is what the Court of Appeals in the Davenport case concluded was error, what the Iowa Court of Appeals concluded was error, it's because there the court was looking at, you know, in an instance when an officer was driving by a house and peering in that person's, you know, house, that there hadn't been any search at all there, but that that could still, when it was done over and over and given the nature that it was intruding on the person's house, you know, could rise to a tort level. But here, this court's finding was not that there was no seizure. There clearly was a seizure, but it was a constitutional one supported by reasonable suspicion, and in that situation, it would not be highly offensive to a reasonable person. As a matter of law, you know, a constitutional seizure supported by reasonable suspicion would not be highly offensive. Now, also, given the nature of the facts that this was, you know, not someone in their house, this was someone driving their vehicle on a public roadway, you know, also lead to it not being highly offensive. Let me ask you a hypothetical. Let's suppose that an officer has an objectively reasonable basis to perform a strip search, and therefore it's not a violation of the Fourth Amendment, but the plaintiff could prove that subjectively the intent of the officer was to expose and embarrass and harass them. Could that not give rise to a tort claim? Possibly a tort claim. You know, I don't want to state broadly that there would be no tort claim that could arise there, but not this tort claim, not an intrusion on seclusion-based tort claim where, you know, it's based on intruding in someone's seclusion, you know, that they've upon them in a highly offensive and objectively unreasonable manner. And in that situation, you know, if it was justified, if it was constitutionally justified, I'm having difficulty thinking of facts that, you know, would not be dismissible as a matter of law. Well, counsel, the same question I asked the other—your opponent. What Iowa case you got that helps us on this? It looks to me like the Iowa federal courts are retreating to the Constitution. I think that's clear in the orders here, and also what Judge Bennett previously said. They appear to try to get there very quickly. So I think it's an Iowa issue. What's the Iowa authority? I believe that's correct, Your Honor. It should be Iowa Supreme Court that we're looking to both for this question about whether the intrusion of seclusion tort works and also for the related question of when we're talking about a state constitutional tort, you know, itself and whether that deviates, you know, in any way from the federal standard. And, you know, there's, you know, a number of recent cases, you know, we cited in our 28J letter earlier this week, on that second question about the constitutional standards between the state constitutional standard and the federal constitutional standard being the same. State v. Struve, which was just recently decided by the Iowa Supreme Court, you know, analyzed, you know, searching an investigatory stop question, you know, similar to this one, did it identically between the state and federal constitution. We certainly have some earlier precedent that was hotly debated amongst members of the court, you know, and has been shifting, you know, more now in the direction of following, you know, state and federal constitutionally identically. My question is a lot simpler than that. What's the most direct authority we've got? I know about your cases, particularly on the Iowa Constitution, generally in the floor, admirable floor and all the other stuff. But what's the best case on this? What's your best case on this reasonable seclusion or invasion of privacy or whatever you want to call it and how it's interpreted under Iowa law? And it would be nice if they threw in some comparison to the U.S. Constitution. Go ahead. Sure. The marriage of tickets case, which is an Iowa Supreme Court case, I think does a very nice job of what the requirements of this tort are and certainly would be what we rely on. And I think both parties rely on as. Yes, I know. But no law enforcement in that case. Right. That that that's correct. And, you know, it's really, you know, there is no case that says, you know, in the law enforcement context that that that this would be found to to be an investigatory stop. It's been expressly held to be constitutional based on reasonable suspicion that that would give rise to a tort. I think the closest to addressing those issues we have is the Court of Appeals case relied on by by appellants that the Davenport case and balance are correct under Iowa rule of appellate procedure six point nine oh four to see that is can be persuasive authority. It's not controlling and it's fine authority, you know, front with respect to this case as well. It's not as we read the case. It does not say that does not hold that a that this an investigatory stop like this that is held to be constitutional would would meet the tort. It's dealing with a different situation. And it makes clear that you should follow the tort standard in looking at this and appropriately. Council, let me ask this. Whose burden is it to prove that judgment as a matter of law should be entered based on the case law? Well, the when considering judgment as a matter of law, the facts should be considered a should be considered in the appellant's favor. But the law is what it is. But my point is, I think it's your burden to prove to show the case law supporting judgment as a matter of law, not not the other side. I, I don't know that I agree with that, Judge, Judge Krause, because the the the plaintiff certainly has the overall burden in this case. The facts should be construed in the plaintiff's favor. But in the absence of in the absence of state authority, that doesn't mean that a case that should be the Iowa Supreme Court would dismiss as a matter of law that a federal court should go should go forward on the federal court has an obligation to determine as best as it can what the Iowa law is. Plaintiffs could have sought certification on this question or the constitutional question and did not do so in a at least in a timely manner when when that could have been done. And so the district court appropriately attempted to understand what the Iowa Supreme Court law on this question is. Plaintiff has not put forth you know, any argument or it's not put forth any case, you know, that would show that the district court, you know, did so wrongly. I see I'm nearing the end of my time and I want to briefly talk about the excessive force jury instruction as as well. And this as well was, you know, flowed from the prior decision of this court as the district court attempted to to ensure that it was complying with the binding law of the case on that case. As we pointed out in our brief, you know, this should be considered, you know, under plain error. You know, this issue was not preserved by the plaintiffs. You know, they had the opportunity to object to these questions, you know, in the formal process. This was an appropriate instruction to try to give meaning to every operative, you know, holding of this court's prior decision. And it's also correct as a matter of first principles, you know, based on the facts that, you know, were before the court after hearing this trial and as an appropriate point to draw the legal line as to, you know, when the excessive force or when the facts would change from being a constitutional constitutionally constitutionally correct to a constitutional violation. And it would be different if different facts had come out at trial. If there had been some basis to conclude that there had been additional excessive force that hadn't been in the summary judgment record, you know, before, if the phantom, you know, third officer had reappeared and had allegations, you know, against them. But that's not the case. The facts were substantially identical to the summary judgment record. The district court, you know, properly with the excessive force instruction as well as its other rulings, you know, tried to faithfully and deliberately give effect to this court's, you know, prior holdings. With that, we would ask that the district court judgment be affirmed. Thank you, Mr. Langholz. Mr. Clausen, the court will hear from you. May it please the court. Good morning. My name is Zach Clausen and I represent Jessica Dorhout-Van Ingen in this lawsuit. I don't want to rehash any of the points that Mr. Langholz has made this morning, but I do want to specifically point out a few issues that are unique to my client, Jessica Dorhout-Van Ingen, and also to the stop itself. While we do not believe that there is any legal basis for this court to overturn the district court's instruction on excessive force, should this court disagree, there is no evidence that any alleged error in this instruction had any probable effect on the verdict in this case. Specifically with regard to the claims of M.W., there is no evidence on the part of either defendant that there was any but when asked specifically if there were any weapons pointed at him, M.W. denied that any weapons were pointed at him, and this is also corroborated by both the testimony of Agent Lamp and Officer Dorhout-Van Ingen. With regard to Levi Wilson's claim of excessive force and specifically concerning my client, Jessica Dorhout-Van Ingen, there is no evidence of continuous pointing on the part of Jessica at Levi Wilson. Jessica's testimony was that she holstered her weapon when she came around the vehicle. Agent Lamp supports this version of the events, and Levi Wilson at least admits that Jessica's weapon was holstered by the time that the pat-down search was conducted. Finally, I just want to point out that in this case, there is ample evidence for the jury to have determined that the defendant did not commit excessive force by either not believing Levi Wilson's story or by determining that... Since your time is so short, let me direct you to the invasion of privacy, and you know what the federal courts have been doing? They've been taking the marriage of Teague's case and taking the first analysis appears to be reasonable expectation of privacy, and then they've been jumping the federal courts. I've been proceeding... I don't mean to be critical... I've been proceeding to say that that means that it is the same as the federal. Now, first of all, that's got to be analytically wrong, but what can you tell us about marriage of Teague's or Davenport or any of these cases that tells us what Iowa believes on this tort? Yeah, and what I would say in response to the discussion earlier is the plaintiffs have cited no case for the proposition that a constitutional investigatory stop can serve as the basis for an intrusion upon seclusion claim. We'd also point to the case of Veatch versus the City of Waverly, which held because the conduct of the law enforcement officer in making an arrest was permissible under both the Fourth Amendment and Iowa law, that the common law tort claims in that case should be dismissed. And for those reasons, we would ask that the judgment of the district court be affirmed. Thank you. Thank you, Mr. Klausen. Mr. Jacobson, you have a little bit of time for rebuttal. You'll need to unmute your microphone, Mr. Jacobson. I'm sorry. Thank you. Mr. Langels did mention as well the case that they had the additional authority that they provided to the court of Stade versus Struve, and I guess I just want to point out for the court in analyzing that, all that case did was state that under the Iowa Constitution for an investigatory stop of an ongoing criminal activity, the standard is reasonable suspicion. And what I've argued in my brief is that the standard for a completed crime to make an investigatory or to make a stop isn't reasonable suspicion, it's probable cause. Counsel, do you want to respond to the Veatch point just made, because that is standard state court law, that if it's lawful police stuff, it can't be an invasion of anything. You want to reply to that? Well, I just think that's an erroneous analysis of Veatch. I mean, Veatch was under the search and seizure of state law, and I mean, the court didn't say that because it would comply with the Fourth Amendment. Therefore, the tort claim, the false imprisonment couldn't take place. I thought it said federal and state constitutions. I thought it referred to both of them kind of at the same time. No, it didn't, Your Honor. It referred to the state complied with the state statutory law on search and seizure to determine that in that particular case, the plaintiff couldn't make a false imprisonment claim because the Iowa statutory law complied with. Now, likening that to a tort claim would be, does it comply with Iowa common law tort of invasion of privacy? And that was my argument. Thank you, Your Honors. Very well, Counsel, we appreciate your appearance and arguments before us today. Case is submitted, and we will issue an opinion in due course.